IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01100-RM-KLM

ARROW ELECTRONICS, INC.,

     Plaintiff,

v.

DECO LIGHTING, INC., a division of Deco Enterprises, Inc.,

     Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendant's **Motion to Dismiss** [#8][1] (the "Motion"). Plaintiff filed a Response [#9] in opposition to the Motion, and Defendant filed a Reply [#13]. The Motion has been referred to the undersigned for a recommendation regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c)(3). *See* [#20]. The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#8] be **DENIED**.

## I. Background

     The well-pled facts of the Complaint [#1] are construed in a light most favorable to

---

[1] "[#8]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

Plaintiff. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015). Plaintiff is a New York Corporation with its principal place of business in Colorado. *Compl.* [#1] ¶ 6. Plaintiff is a global provider of products, services, and solutions to industrial and commercial users of electronic products, components, and enterprise computing solutions. *Id.* ¶ 12. Defendant is a California company organized and existing under the laws of the State of California and has its principal place of business in California. *Id.* ¶ 7. The parties entered into a Logistic Services Agreement (the "Agreement") dated February 15, 2016. *Id.* ¶ 1. Under the Agreement, Defendant appointed Plaintiff to provide logistic services in support of Defendant's business of manufacturing and distributing various lighting products ("Products"). *Id.* ¶ 2.

Pursuant to the Agreement, Plaintiff acquired Products that Defendant ordered, and Plaintiff facilitated the movement of those Products from Chinese factories to Defendant's customers. *Id.* ¶ 3. The Agreement required Plaintiff to pay for and acquire title to the Products Defendant ordered. *Agmt.* [#1-1] ¶¶ 10, 13. Plaintiff was then required to arrange for its freight carrier to deliver the Products to a port in China before shipping them to Los Angeles, California, and trucking them to its warehouse in Reno, Nevada. *Agmt.* [#1-1] ¶¶ 1-2, 4, 13.[2] Thereafter, Plaintiff stored the Products at its warehouse until Defendant requested Plaintiff to deliver the Products to Defendant's customers, at which point Plaintiff invoiced Defendant in accordance with the Agreement. *Id.* ¶ 10. Defendant agreed to pay Plaintiff for its logistics services no later than ninety days from receipt of invoices. *Id.* ¶¶

---

[2] *Impact Prods. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004). (explaining that the Court may also consider affidavits and other written material submitted by the parties).

7, 10.

Plaintiff alleges that in 2017, Defendant began to default on its obligation under the Agreement to pay for products and services, and Plaintiff refused to provide further services under the Agreement without advance payment. *Compl.* [#1] ¶ 35. By letter dated February 27, 2018, Plaintiff notified Defendant that Plaintiff was owed approximately $5,159,000. *Id.* ¶ 37. Plaintiff further alleges that despite Defendant's obligations under the Agreement and notice of the outstanding balance, Defendant has refused to pay for and take delivery of Products. *Id.* ¶ 47. As a result, Plaintiff commenced this action on May 8, 2018.

Plaintiff asserts three claims against Defendant. First, Plaintiff asserts a claim for breach of contract. *Id.* ¶¶ 42-52. Second, Plaintiff asserts a claim for promissory estoppel. *Id.* ¶¶ 53-59. Finally, Plaintiff asserts a claim for unjust enrichment. *Id.* ¶¶ 60-66. On the first claim, Plaintiff requests that the Court enter judgment awarding damages in favor of Plaintiff in the approximate amount of $5,159,000, plus attorney's fees, costs, contractual interest, and statutory interest. *Id.* ¶ 67(a). On claim two, Plaintiff requests that the Court enter judgment awarding damages in its favor in the approximate amount of $5,159,000, plus applicable fees, costs, and statutory interest. *Id.* ¶ 67(b). On claim three, Plaintiff seeks an award of restitution in an amount exceeding $3,229,000, plus applicable fees, costs, and statutory interest. *Id.* ¶ 67(c).

In response to the Complaint [#1], Defendant filed the present Motion [#8] seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(2) or to transfer venue pursuant to Fed. R. Civ. P. 12(b)(3). Defendant asserts that the Court lacks personal jurisdiction over it and, even if the Court determines that it has personal jurisdiction over Defendant, the Central District

of California is a more appropriate venue for this action.  *Id.* at 9-10.

## II.  Standard of Review

### A.      Fed. R. Civ. P. 12(b)(2)

The Court analyzes an argument that the Court lacks personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Plaintiff bears the burden of establishing personal jurisdiction over Defendant.  *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984).  Before trial, Plaintiff need only make a prima facie showing of jurisdiction. *Id.*  The Court accepts the well-pled allegations (namely the plausible, nonconclusory, and nonspeculative facts) of the operative pleading as true to determine whether Plaintiff has made a prima facie showing that Defendant is subject to the Court's personal jurisdiction. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Court "may also consider affidavits and other written materials submitted by the parties." *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004). However, any factual disputes are resolved in Plaintiff's favor.  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004).

Exercise of personal jurisdiction over a nonresident defendant must satisfy the requirements of the forum state's long-arm statute as well as constitutional due process requirements.  *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992).  In addition to personal jurisdiction, the Court must first consider whether it has jurisdiction over the subject matter and the parties against whom judgment is sought.  *Dennis Garberg & Assocs., Inc., v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997);  *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1002-03 (10th Cir. 1986).  Colorado's long-arm statute "is to be interpreted as extending jurisdiction of our state courts to the fullest extent permitted by

the due process clause of the United States Constitution." *Mr. Steak, Inc. v. Dist. Court In & For Second Judicial Dist.*, 574 P.2d 95, 96 (Colo. 1978). Therefore, if jurisdiction is consistent with the due process clause, Colorado's long-arm statute authorizes jurisdiction over a nonresident defendant. *See id.* Under the due process clause of the Fourteenth Amendment, personal jurisdiction may not be asserted over a party unless that party has sufficient "minimum contacts" with the state, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice." *Helicopteros Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

## B.    Fed. R. Civ. P. 12(b)(3)

The Court considers a motion for improper venue under Fed. R. Civ. P. 12(b)(3) and analyzes an argument for change of venue under 28 U.S.C. § 1404(a). Pursuant to § 1404(a), a District Court may transfer any civil action to any other district or division where it might have been brought or to any district division to which all parties have consented for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). "§ 1404(a) is intended to place discretion in the District Court to adjudicate motions for transfer according to an 'individualized case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Cor.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). A court's assessment of convenience under § 1404(a) is discretionary. *Galvin v. McCarthy*, 545 F. Supp. 2d 1176, 1181 (D. Colo. 2008). However, unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed. *Id*.

A party moving to transfer a case pursuant to § 1404(a) bears the burden of

establishing that the existing forum is inconvenient. *Chrysler Credit Corp. v. Cty. Chrysler, Inc.*, 928 F. 2d 1509, 1516 (10th Cir. 1991). There are several factors that a court may consider in determining whether to transfer a case under § 1404(a). These include the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to ensure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; the relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of practical nature that may make a trial easy, expeditious and economical. *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967).

### III. Analysis

**A.     Personal Jurisdiction**

Defendant contends that Plaintiff cannot meets its burden of demonstrating that this Court has general or specific jurisdiction over Defendant, and therefore the exercise of personal jurisdiction over Defendant in Colorado does not comport with due process. *Motion* [#8]. Defendant argues that this Court does not have general jurisdiction over Defendant because Defendant has never had any contacts with the State that could be characterized as "continuous and systematic." *Id.* at 9. To support this argument, Defendant contends that it has no registered agent here, has never held a meeting here, has never had an office here, has never employed anyone here, and has never maintained any business infrastructure, such as bank accounts, machinery, or phone lines, here. *Id.* at 7. Plaintiff does not contend that Defendant is subject to general jurisdiction in the State.

*Response* [#9] at 5. However, Plaintiff does contend that the Court may exercise specific jurisdiction over a nonresident defendant when the claims against the Defendant arise out of significant activities which Defendant purposefully directed at residents of the forum. *Response* [#9] at 7. Plaintiff maintains that Defendant's actions are significant and purposefully directed at the State of Colorado. *Compl.* [#1] ¶ 10. Specifically, Plaintiff maintains that Defendant negotiated the Agreement and a subsequent Amendment with Plaintiff's personnel in Colorado; appointed Plaintiff to provide logistics services under the Agreement; and communicated with Plaintiff's personnel in Colorado throughout the negotiation and performance of the Agreement. *Id.* Plaintiff also maintains that even if Defendant never visited Colorado or performed work here, its conduct still demonstrates more than "random, fortuitous, or attenuated contacts" with Colorado. *Id.*

In determining whether the Court may enter an order in this case, the Court must first consider whether it has jurisdiction over the subject matter and the parties against whom judgment is sought. Subject matter jurisdiction here is governed by 28 U.S.C. §1332(a), which provides in pertinent part that "[t]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between citizens of different states." The Complaint alleges that Plaintiff is a New York corporation with its principal place of business in Colorado and that Defendant is a California corporation with its principal place of business in California. *Compl.* [#1] ¶¶ 6-7. The damages sought by Plaintiff for Defendant's alleged breach of the Agreement total well above the $75,000 threshold. *Id.* ¶ 37. Hence, the parties are diverse and the amount in controversy exceeds the statutory minimum. Pursuant to 28 U.S.C. § 1332(a), the Court may exercise subject matter

jurisdiction over this dispute.

Plaintiff affirmatively agrees that the Court does not have general jurisdiction over Defendant. *Response* [#9] at 5 n.3. Specific jurisdiction may be asserted if a defendant has "purposefully directed" its activities toward the forum state, and if the lawsuit is based on injuries which "arise out of" or "relate to" the defendant's contacts with the state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just." *Dudnikov*, 514 F.3d at 1070. To implement this principle, courts typically make three inquiries: (1) whether the defendant purposefully directed its activities at the forum state or residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Id.*

Thus, Plaintiff must provide sufficient facts to demonstrate that Defendant purposefully directed its activities at Colorado or residents of Colorado. *Id.* To this end, Plaintiff alleges that Defendant purposefully directed its activities towards Colorado by availing itself of the privilege of conducting business with Plaintiff, a Colorado-based company, in order to, in part, sell products to Colorado residents. *Response* [#9] at 7. Furthermore, Plaintiff argues that the Court has jurisdiction over Defendant because this lawsuit is based on injuries arising out of the parties' business arrangement. *Id.*

With respect to the first inquiry, the Court finds that Plaintiff has shown that Defendant directed activities toward the residents of Colorado and thus "purposefully availed [itself] of the protection and benefits of the laws" of Colorado. *United States v.*

*Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002). While a contract with an out-of-state party *alone* does not establish sufficient minimum contacts, courts look to prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing to determine when a defendant has purposefully established minimum contacts with the forum through execution of a contract. *See Burger King*, 471 U.S. at 479. A defendant's deliberate creation of a "continuing obligation" with the forum state has also been identified as a factor constituting purposeful availment. *Id.* at 473. Here, Defendant entered into an Agreement with Plaintiff, a Colorado-based company, as well as a subsequent amendment to that Agreement. *Compl.* [#1] ¶ 1. Pursuant to the Agreement, Plaintiff received shipping instructions from Defendant via Purchase Order(s) and Plaintiff delivered the Products according to Defendant's directed designation. *Agmt.* [#1-1] ¶ 7. Defendant corresponded with Plaintiff's personnel in Colorado regarding the Agreement and Amendment on scores of occasions by mail and electronic mail, and Defendant sent formal notices in accordance with the Agreement to Plaintiff's personnel in Colorado. *Compl.* [#1] ¶ 10. Defendant negotiated the Agreement and Amendment with Plaintiff's personnel in Colorado; communicated with Plaintiff's personnel in Colorado throughout the negotiation and performance of the Agreement; appointed Plaintiff to provide it with logistic services; to deliver Products on its behalf, including to Colorado customers; and Plaintiff's performance of the Agreement and Amendment, including testing of Defendant's Products, was supervised and conducted in part from Colorado. *Id.* Pursuant to the Agreement, the parties agreed Plaintiff would designate Defendant's Product stored in its warehouse as non-cancelable, non-returnable ("NC/NR"), meaning that Defendant could not terminate, cancel, reschedule, or return the Products because the Products posed a financial liability

to Plaintiff if not purchased by Defendant within the agreed time frame. *Compl.* [#1] ¶ 25. In addition, Defendant agreed to pay accrued interest, as a penalty, on past due invoices of 1.5% per month. *Agmt.* [#1-1] ¶ 10-11. Based on these ongoing obligations, the Court finds that Defendant has created continuing obligations with the forum state. In other words, Defendant has sufficiently availed itself of the benefits and protections of Colorado and has directed numerous activities toward the forum state and one of its residents, i.e., Plaintiff. If Defendant deliberately created continuing obligations with the forum state, then Defendant has availed itself of the privilege of conducting business there. *Found for Knowledge in Dev. v. Interactive Design Consultant, LLC*, 234 P.3d 673 (Colo. 2010).

With respect to the second inquiry, taking the allegations of the Complaint as true, the Court finds that Plaintiff has shown that Defendant's activities directed toward Colorado have given rise to this suit. A court has specific jurisdiction over a Defendant when the injuries triggering litigation arise out of and are related to activities that are significant and purposefully directed by the Defendant at the residents of the forum state. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1194 (Colo. 2005). In a broad sense, this dispute arises from Defendant's contractual relationship with Plaintiff, an activity connected to Colorado in the ways described above. In a narrower sense, the injury allegedly suffered by Plaintiff from Defendant defaulting on its payment obligations is likewise felt by a Colorado company. In either level of abstraction, the injuries allegedly suffered by Plaintiff were proximately caused by Defendant's activities directed toward Colorado. Without commenting on the legitimacy of Plaintiff's claims, the Court finds based on these considerations that Plaintiff has sufficiently alleged that its injuries arose from Defendant's contacts with Colorado.

With respect to the third inquiry, the Court finds that the exercise of personal jurisdiction in this case does not offend traditional notions of fair play and substantial justice. Because the Court has found that Plaintiff has sufficiently alleged that Defendant purposefully availed itself of Colorado's laws, and that Plaintiff's injuries arose from Defendant's activities aimed toward Colorado, Plaintiff has pled a prima facie case for personal jurisdiction. The Court can exercise jurisdiction over Defendant in this case unless exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Dudnikov*, 514 F.3d at 1070. With minimum contacts established, it is incumbent on Defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 1080. Several factors are considered when determining if exercising jurisdiction offends traditional notions of fair play and substantial justice: "the burden on the defendant; . . . the forum state's interest in adjudicating the dispute; . . . the plaintiff's interest in obtaining convenient and effective relief; . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies. . . ." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The Court addresses each of these factors in turn.

Defendant argues that litigating the case in Colorado would be more costly because not only will Defendant have to fly all of its witnesses from California to Colorado, Plaintiff will also likely need to fly two of its employee representatives to Colorado. *Motion* [#8] at 14. Furthermore, Defendant maintains that its most critical witnesses will include its President, CEO, CFO, Vice President of Sales, and Purchasing Manager. *Motion* [#8] at 14. Defendant is a small company relative to Plaintiff and the group of individuals

mentioned above represents all of Defendant's executive team.  *Id.*  According to Defendant, by contrast Plaintiff is a large international corporation and none of its upper management will likely be called to testify.  *Id.*  As a result, Defendant argues that litigating in Colorado would work a significant hardship on Defendant because all of its management personnel would be absent from its headquarters, whereas Plaintiff's operations would suffer little.  *Id.*  However, "[i]t is only in highly unusual cases that inconvenience will rise to the level of constitutional concern. . . . [I]n this age of instant communication, and modern transformation, the burdens of litigating in a distant forum have lessened." *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1212-13 (10th Cir. 2000).  Defendant corresponded with Plaintiff's personnel in Colorado regarding the Agreement and Amendment on several occasions by mail, electronic mail, and telephone.  *Compl.* [#1]  ¶ 10.  Further,  Colorado has a legitimate interest in presiding over the dispute because Plaintiff's principal place of business is located in Colorado and this suit arises out of Defendant's contacts with the forum.   However, the Court notes that the choice-of-law provisions in the Agreement require the application of California law. *Agmt.* [#1-1] ¶ 15. Despite this, Colorado has a significant interest in providing its residents with a forum where they can seek redress for injuries caused by out-of-state actors.  These factors weigh in favor of exercising specific jurisdiction over Defendant in Colorado.

This dispute may be litigated in Colorado because Plaintiff resides in Colorado and the alleged injury arose due to Defendant's contacts with Colorado. *Archangel*, 123 P.3d at 1194. The inconvenience and cost of litigating out-of-state are no small burdens; however, they do not amount to unconstitutional burdens barring an exercise of personal jurisdiction, especially when coupled with the legitimate counteracting concerns of Plaintiff.

Accordingly, the Court concludes that it has personal jurisdiction over Defendant.

**B.     Venue Transfer**

The Court next addresses Defendant's argument to transfer venue to the Central District of California. The transfer of pending civil cases from one district to another is governed by 28 U.S.C. § 1404(a).  This subsection requires the Court to determine that transfer is necessary for convenience of the parties and witnesses, as well as to further the interests of justice.  The burden of establishing that the suit should be transferred is on the movant.  *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967).  Section 1404(a) grants the court discretion to adjudicate motions for transfer.  *Chrysler Credit Corp.*,  928 F.2d at 1516.

Among the factors the Court may consider include the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to ensure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; the relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that may make a trial easy, expeditious and economical.  *Texas Gulf Sulphur Co.*, 371 F.2d at 147;  *Chrysler Credit Corp.*, 928 F. 2d at 1516.

In support of its Motion [#8], Defendant contends that several factors strongly support a transfer of venue: the accessibility of witnesses, the cost of litigation, the difficulties that may arise from a congested docket, and the applicable law governing the

dispute. *Id.* at 10-14. Defendant also contends that Plaintiff's choice of forum should be given less weight. *Id.*

### 1. The Accessibility of Witnesses

The convenience of the witnesses is the most important factor in deciding a motion under § 1404(a). *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010). "To demonstrate inconvenience, the movant must identify the witnesses and their locations; 'indicate the quality or materiality of the testimony'; and 'show that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary.'" *Id.* (citing *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)); *see also Palace Expl. Co. v. Petroleum Dev. Co.*, 316 F.3d 1110 (10th Cir. 2003).

Defendant argues that most or all of the individuals who may be deposed or called as witnesses to testify are located in California. *Motion* [#8] at 4. Defendant has identified seven anticipated witnesses, all of whom reside in California. *Id.* at 4-5. These witnesses include four employee representatives involved in the negotiation and performance of the Agreement and three other employees who witnessed the alleged damage caused by Plaintiff's misconduct. Defendant's employee representatives involved in the negotiations and performance of the Agreement are Sam Sinia (CEO), Ben Pouladain (President), Craig Allen (CFO), and Richard De La Rossa (Purchasing). *Id.* Defendant's employees who witnessed the alleged damage caused by Plaintiff's misconduct are Steve Schwartz (VP of Sales), Peter Cheng ("Cheng") (Customer Service), and Ivan Guerrero (Operations). *Id.* However, Mr. Cheng, one of Defendant's key witnesses, is no longer an employee of Defendant. *Id.* As such, Mr. Cheng is not subject to compulsory process in Colorado and

-14-

has little incentive to travel to Colorado for trial. Defendant asserts that it would be at a severe disadvantage if it is only able to prove its case at a jury trial through deposition testimony. *Id.* at 12. According to Defendant, in additional to these seven witnesses, two of Plaintiff's employees, Suzy Borland ("Borland") and Lara Riker ("Riker"), who were involved in negotiating and implementing the Agreement, are also based in California. *Id.* at 5.

On the other hand, Plaintiff asserts that the witnesses in this case are split between California and Colorado, and transfer would only shift Defendant's inconvenience to Plaintiff. *Response* [#9] at 10. Plaintiff has identified at least nine witnesses who worked for it during the relevant period and whose testimony would be relevant in interpreting the Agreement. *Id.* Plaintiff's potential witnesses all reside in Colorado. *Id.* These individuals are Cheryl Bachman, Charles Cobb, David Demona, Denika Dwyer, Kristina Dobyns ("Dobyns"), Ali Hassan, Bruce Jones ("Jones"), Thomas Leffler, and Robert Montini. *Id.* at 11. In addition, Plaintiff notes that two of its potential witnesses, Ms. Dobyns and Mr. Jones, are no longer employees but reside in Colorado and are subject to compulsory process here, but not in California. *Id.*

While Defendant has identified its potential witnesses and their location, has given some indication as to the materiality of their testimony, and has indicated that deposition testimony would be unsatisfactory, Defendant has not shown that any witness is unwilling to come to Colorado or that the use of compulsory process would be necessary. Plaintiff has identified nine potential witnesses who reside in Colorado, as opposed to Defendant's seven witnesses who reside in California. However, the extent to which convenience will be weighed depends more on the materiality of the prospective witnesses' testimony rather

than the number of prospective witnesses.  Unlike Defendant, Plaintiff has not addressed the *materiality* of its witnesses' testimony, as opposed to the mere *relevance* of their testimony.  *Emp'rs Mut.*, 618 F.3d at 1169.  Accordingly, this factor weighs slightly in favor of transfer.

### 2.      Cost of Litigation

Defendant asserts that the cost to both parties of making the necessary proof available and the waste of time incurred in transporting witnesses to Colorado are greater if this case is adjudicated in Colorado.  *Motion* [#8] at 14.  Defendant points out that it will need to fly all of its witnesses from California to Colorado, which is more than a one-thousand-mile journey.  *Id.*  Defendant further asserts that Plaintiff will likely need to fly its employee representatives, Ms. Borland and Ms. Riker, to Colorado if they are chosen to serve as witnesses.  Furthermore, Plaintiff is an international corporation.  Relative to Plaintiff, Defendant is a small company and litigating in Colorado would work a greater financial hardship on Defendant as opposed to Plaintiff.

Additionally, Defendant argues that litigating this case in Colorado would significantly impact its ability to run its business at the most basic level, whereas Plaintiff would suffer very little.  *Id.* at 14-15.  Because it is a small company and its most critical witnesses will include its President, CEO, CFO, Vice President of Sales, and Purchasing Manager, trial of the case would leave Defendant's headquarters bereft of management-level employees.  *Id.*  In contrast, none of Plaintiff's upper management is likely to be called to trial, and therefore, according to Defendant, litigating in Colorado would pose a significantly greater financial hardship for Defendant relative to Plaintiff.  *Id.*  However, Defendant does not explain why all management-level employees would need to be present in Colorado

throughout a trial.  Based on these considerations, the Court finds that this factor weighs slightly in favor of transfer.

### 3.    The Applicable Law Governing the Dispute

In a diversity action, courts prefer that the action to be adjudicated by a court sitting in the State that provides the governing substantive law.  *Emp'rs Mut.*, 618 F.3d at 1169. However this factor receives less weight when the case involves relatively simple legal issues.  *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

Defendant argues that the Central District of California is a more suitable venue because under the Agreement all claims and recovery in this case are governed by California law.  *Motion* [#8] at 12; *see Compl.* [#1]  ¶¶ 52, 59, 66.  Additionally, Defendant's claim for breach of implied warranty of non-infringement is to be interpreted under California Commercial Code § 2312.  Defendant asserts that, because this Court will have to look to both California common law and statutes in adjudicating this dispute, a Colorado court will by nature have less insight into the applicable law.  *Motion* [#8] at 12-13.  Plaintiff rebuts this argument by noting that any disadvantage the Court may experience in interpreting California's Commercial Code is mitigated by the fact that Colorado has an identical provision in its own commercial code.[3]  *Response* [#9] at 14.  Defendant argues

---

[3] *Compare* Cal. Comm. Code § 2312(3):

Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like[,] but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specification.

*With* Colo. Rev. Stat. § 4–2–312(3):

Unless otherwise agreed, a seller who is a merchant regularly dealing in goods of the kind

that even though the statutory language is similar, its interpretation will require an evaluation of California case law which would be more readily performed by a California court. *Reply* [#13] at 5.

Defendant's argument that a California court is in a better position to adjudicate disputes necessitating the interpretation of its laws has some merit. The fact that the parties agreed that the Agreement would be construed and enforced in accordance with the laws of the State of California weighs in favor of transfer. *Agmt.* [#1-1] ¶ 15. However, this factor is less significant because federal judges are qualified to apply state law and because a breach of contract claim is a relatively simple legal issue. *Emp'rs Mut.*, 618 F.3d at 1169. Therefore the Court finds that this factor weighs only slightly in favor of transfer.

### 4.    Difficulties that Arise from a Congested Docket

When evaluating the difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and the average weighted filings per judge. *REO Sales v. Prudential Ins. Co. of Am.*, 925 F. Supp. 1491, 1495 (D. Colo. 1996). Defendant argues that the Central District of California has a less congested docket than the District of Colorado. *Motion* [#8] at 12. Defendant cites the Federal Court Management Statistics from March 2018, noting that civil cases in the Central District of California were disposed of roughly ten weeks earlier than those in Colorado and went to trial earlier by about twenty-two weeks. *Id.* at 13-14 (citing

---

warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like, but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

Ex. D [#8-4]).  Defendant asserts that transfer to California would relieve pressure on Colorado's more congested docket and would allow the parties to resolve the dispute more quickly.  Based on these statistics, the Central District of California has a less congested docket than the District of Colorado, and therefore, the Court finds that this factor weighs slightly in favor of transfer.

### 5.    The Plaintiff's Choice of Forum

"[U]nless the balance is strongly in favor of the movant the Plaintiff's choice of forum should rarely be disturbed."  *Scheidt*, 956 F.2d at 965 (quoting *William A. Smith Contracting Co. V. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)).  Defendant asserts that Plaintiff's choice of forum should receive less weight because Plaintiff miscasts the deference afforded a plaintiff's choice as essentially determinative of the issue and sidesteps the factors that make Colorado a significantly less convenient forum.  *Reply* [#13] at 4-5.  Specifically, Defendant argues that Plaintiff has failed to show any nexus between its claim and Colorado other than its residence.  *Id.* at 13.  To support this argument, Defendant notes that a majority of events giving rise to this action occurred in or near the Los Angeles area, the Agreement was negotiated by Defendant from California, and the vast majority of the witnesses reside in California.  *Motion* [#8] at 10-11.  However, according to Plaintiff, there is a substantial connection between this claim and Colorado aside from its residence here.  Plaintiff points to the fact that the Agreement and Amendment were received and approved by Plaintiff's personnel in Colorado; Defendant requested delivery of its products to Colorado customers; Plaintiff's performance of the Agreement and Amendment, including testing of Defendant's products, was conducted in

Colorado; Defendant corresponded with Plaintiff in Colorado regarding the Agreement and Amendment on a number of occasions; and Defendant sent formal notices under the Agreement to Plaintiff's personnel in Colorado. *Compl.* [#1] ¶ 10. Based on these considerations, the Court finds that this factor weighs in favor of Plaintiff.

The Court is unaware of another case in which these five factors have weighed as determined here. Nonetheless, although four of the factors discussed above weigh slightly in favor of transfer, this is not the "strong" showing required by law to disturb Plaintiff's choice of forum. *Scheidt*, 956 F.2d at 965. Plaintiff's choice of forum receives less deference if the Plaintiff does not reside in the District. *Emp'rs Mut.*, 618 F.3d at 1167 (citing *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006)). Courts also accord less weight to the Plaintiff's choice of forum when the facts giving rise to the dispute have no material relation or significant connection to the Plaintiff's chosen forum. *Id.* (citing *Cook*, 816 F.Supp. at 669). Here, Plaintiff is a resident of the District of Colorado and the facts giving rise to the dispute have a significant connection to Plaintiff's chosen forum. Defendant has the burden of showing that the suit should be transferred and unless the evidence and circumstances of the case are "strongly" in favor of transfer, the Plaintiff's choice of forum should not be disturbed. *Texas Gulf Sulphur Co.*, 371 F.2d at 147. Having carefully considered the relevant factors, the Court finds that Defendant has not met is burden of showing that the Plaintiff's chosen forum is inconvenient. "Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change in venue." *Scheidt*, 956 F.2d at 966. Accordingly, the Court respectfully recommends that the Motion be denied as to the request to transfer venue to the Central District of California.

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#8] be **DENIED.**

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  October 5, 2018

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge