# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Raymond P. Moore

Civil Action No. 1:18-cv-1100-RM-KLM

Arrow Electronics, Inc.,

    *Plaintiff*,

    *v.*

Deco Lighting, Inc., a division of
Deco Enterprises, Inc.,

    *Defendant*.

---

# ORDER

---

This is a diversity matter alleging breach of contract and related recovery theories. Before the Court is Deco Lightning, Inc.'s motion to dismiss for lack of personal jurisdiction or transfer venue to the Central District of California (Motion, ECF No. 8; Reply, ECF No. 13), to which Arrow Electronics, Inc. responded (Response, ECF No. 9). The Court referred the Motion to Magistrate Judge Kristen Mix, who recommended that it be denied in full. (Recommendation, ECF No. 29.) Deco timely objected (Objection, ECF No. 30) and Arrow responded. (Objection Response, ECF No. 34.)

The Objection does not debate the facts or overarching legal principles as set out by the magistrate judge. Instead, Deco objects that the Recommendation (1) improperly viewed Arrows alleged Colorado injury as "arising from" Deco's omissions in California in finding personal jurisdiction; and (2) misapprehended the relative weight to be afforded each factor under venue-transfer analysis. The Court disagrees and affirms the Recommendation.

I.  **BACKGROUND**

The Recommendation pulled the following facts from the Complaint and attachments. (ECF No. 1.)[1] Arrow is a New York Corporation with its principal place of business in Colorado. (Compl. ¶ 6.) It is a global provider of products, services, and solutions to industrial and commercial users of electronic products, components, and enterprise computing solutions. (*Id.* ¶ 12.) Deco is a California company organized and existing under the laws of California and has its principal place of business there. (*Id.* ¶ 7.) The parties entered into a Logistic Services Agreement (the "Agreement") dated February 15, 2016. (*Id.* ¶ 1.)

Under the Agreement, Deco appointed Arrow to provide logistic services in support of Deco's business of manufacturing and distributing various lighting products ("Products"). (*Id.* ¶ 2.) Deco ordered the Products; Arrow then acquired them and facilitated their movement from Chinese factories to Deco's customers. (*Id.* ¶ 3.) The Agreement required Arrow to pay for and acquire title to the Products Deco ordered. (Agreement ¶¶ 10, 13, ECF No. 1-1.) Arrow would then arrange to deliver the Products from China to its warehouse in Reno, Nevada via Los Angeles. (*Id.* ¶¶ 1–2, 4, 13.) Arrow stored the Products there until Deco requested Arrow to deliver them to Deco's customers, at which point Arrow invoiced Deco in accordance with the Agreement. (*Id.* ¶ 10.) Deco agreed to pay Arrow for these logistics services no later than ninety days from receipt of invoices. (*Id.* ¶¶ 7, 10.)

Arrow alleges that in 2017, Deco began to default on its obligation under the Agreement to pay for products and services, and Arrow refused to provide further services without advance

---

[1] For purposes of analyzing personal jurisdiction at the pleading stage, courts must take as true the well-pled allegations in the complaint and resolve any factual disputes in the parties' affidavits in the plaintiff's favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

payment. (Compl. ¶ 35.) On February 27, 2018, Arrow notified Deco of its overdue debt of approximately $5,159,000. (*Id*. ¶ 37.) Arrow further alleges that despite Deco's obligations under the Agreement and notice of the outstanding balance, Deco has refused to pay for and take delivery of the Products. (*Id*. ¶ 47.)

As a result, Arrow commenced this action on May 8, 2018, asserting claims sounding in breach of contract (*Id*. ¶¶ 42–52), promissory estoppel (*Id*. ¶¶ 53–59), and unjust enrichment (*Id*. ¶¶ 60–66). Arrow asks the Court for damages, plus applicable fees, costs, and statutory interest (or restitution). (*Id.* ¶ 67.) In response, Deco filed the Motion, which seeks dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) or, in the alternative, to transfer venue to the Central District of California pursuant to Fed. R. Civ. P. 12(b)(3).

## II. ANALYSIS

Although there is some suggestion by Arrow to the contrary, the Court reviews the Recommendation *de novo*. Fed. R. Civ. P. 72(b)(3). Arrow correctly notes that where a party fails to make sufficiently specific objections—or where it raises new theories in those objections—the same may be waived. *See Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate."). Arrow insinuates, in several places, that Deco has pushed forth novel arguments in the Objection which the Court should not entertain. (*See, e.g.*, Objection Response at 16 (noting the presence of a "separate, broad argument, offered now" that the magistrate judge improperly elevated a single consideration over the others).) The Court does not agree that treating Deco's Objection arguments as novel is appropriate under the circumstances. Viewed as a whole, the Objections do not provide fresh legal or factual theories so much as they ask this Court to re-evaluate, reassign, and shift the weight the magistrate judge

assigned to the relevant legal considerations—an argument it was impossible for Deco to make before having the benefit of reading and considering the Recommendation.[2] Therefore, the Court examines the Recommendation *de novo*.

### a. The Court has personal jurisdiction over Deco.

The Recommendation provided a correct summary of the legal hurdles a plaintiff must overcome for the Court to have personal jurisdiction over a defendant. (Recommendation at 4–5.) Colorado's long-arm statute requirements must be met: Under it, exercise of personal jurisdiction is appropriate "to the fullest extent permitted by the [D]ue [P]rocess [C]lause of the United States Constitution," *Mr. Steak, Inc. v. Dist. Court In & For Second Judicial Dist.*, 574 P.2d 95, 96 (Colo. 1978), which demands that a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). The "minimum contacts" standard is usually met in terms of "general" or "specific" jurisdiction. *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (U.S. 2011).

All parties and the magistrate judge agree that Arrow is not invoking general personal jurisdiction. (*See* Recommendation at 6, 8; Objection at 7; Response at 5 n.3.) A court may assert *specific* jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090–91 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472

---

[2] In fact, large swaths of legal argument in the Objection repeat, verbatim, from the original Motion. (*Compare, e.g.*, Motion at 10–12 ("Even if the Court determines . . . and may refuse to do so") *with* Objection at 10–12 (same).) However, Deco has followed most of these quoted sections with specific argument addressing the Recommendation. (*See, e.g.*, Objection at 12 ("The Magistrate Judge . . . does so strongly.").)

(1985). This "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person[, but] where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King Corp*, 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

Deco does not appear to question that it purposefully availed itself of this forum. But even if it does object on that ground, the Court finds that it did avail itself here by creating an ongoing relationship with a business in the forum. *See, e.g.*, *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005) (finding purposeful availment in a contract case, not by mere fact of contract, but by creating continuing obligations with a forum-state business which performed invoicing and shipping operations on the defendant's behalf); *Found. for Knowledge in Dev. v. Interactive Design Consultants, LLC*, 234 P.3d 673, 680 (Colo. 2010) (emphasizing that the defendant had created a relationship which required work to be performed in the forum and reminding that the Supreme Court rejected the notion that the absence of physical contacts can defeat personal jurisdiction).

Rather, the Objection argues that the Recommendation improperly found that Arrow's suit "arise[s] from [its] forum-related contacts." (Objection at 8.) Deco surmises that it only contracted with a Colorado company and corresponded with the same. It sees its alleged breaches of the Agreement—failing to buy Products it agreed to buy and failing to pay for Products already shipped—as merely *omissions* that took place in *California*, where it sits. According to Deco, these circumstances are not sufficient to confer jurisdiction, and the

Recommendation "did not identify a single action [Deco] took *in this state*." (*Id.* (emphasis in original.) "Taken to its logical conclusion," Deco warns, "the Magistrate Judge's reasoning would allow that any company that contracted with a Colorado corporation or that corresponded with a Colorado corporation could be subject to suit in Colorado." (*Id.*)

Deco too selectively draws from the Recommendation's analysis, and, at any rate, does not base the Objection upon the proper legal inquiry. To establish the "arise out of" prong of specific jurisdiction, a court's focus is not the precise location where an accused party sits as it acts (or fails to act), but whether "a nexus exists between [a] Defendant's forum-related contacts and the Plaintiff's cause of action." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998). Here, the Agreement required significant work to be performed in Colorado by Arrow, and Deco's alleged failure to act—even if properly characterized as wholly outside the forum—is the very source of the injury felt inside the forum. Deco cannot suggest that the well-pleaded allegations in the Complaint, taken as true, are more properly attributable to random, fortuitous, or attenuated events not linked to its own conduct. Finally, because Deco also fails to contest that the Court's exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice, the Court adopts the conclusions of the Recommendation as it pertains to personal jurisdiction.

### b. Venue is proper in this forum.

The Recommendation's venue analysis properly focused on 28 U.S.C. § 1404(a), which imbues a court with broad discretion and places the burden of establishing that the suit should be transferred on the movant. *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967). This burden is heavy: "Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *William A. Smith Contracting Co. v. Travelers Indem. Co.*,

467 F.2d 662, 664 (10th Cir. 1972). Overcoming that burden is fact-intensive, but the factors courts consider include (1) accessibility of witnesses and other proof, including availability of compulsory process to ensure witness attendance at trial; (2) the costs to the parties of proving their cases; (3) difficulties arising from congested dockets; (4) the advantage of having a local court determine questions of local law; (5) enforceability of judgment; (6) any obstacles to a fair trial; (7) whether questions may arise concerning conflict of laws; and (8) all other practical considerations that make trial easy, expeditious, and economical. *Texas Gulf Sulphur Co.*, 371 F.2d at 147. The parties' arguments center on the first four of these considerations.

1. **Accessibility of Witnesses**

The Objection slightly exaggerates the significance of the witness-accessibility inquiry. Quoting *Employers Must. Cas. Co. v. Bartile Roofs, Inc.*, Deco contends that "[t]he convenience of the witnesses is the most important factor in deciding a motion under § 1404(a)." (Objection at 10 (quoting 618 F.3d 1153, 1169 (10th Cir. 2010)).) Because the Recommendation cited the same language, but ultimately gave Arrow's choice of forum greater deference, Deco finds the magistrate judge's assessment to be internally contradicting. (Objection at 16.) But Deco takes this language from *Bartile Roofs* out of context. There, the court understood that, *given* "the plaintiff's choice of forum should rarely be disturbed," the convenience of witnesses is the most important factor by which a defendant may satisfy its transfer burden. *See Bartile Roofs*, 618 F.3d at 1167–69 (beginning by acknowledging deference to the plaintiff before turning to other factors, including accessibility of witnesses). The Court reads the Recommendation as finding that—even though this "most important factor" weighed in favor of transfer—it was not enough, in this instance, to overcome the general presumption that "strongly favors" a plaintiff's venue choice. *See id.* at n.13 ("For more than five decades, we have required the movant to demonstrate

that the balance of factors 'strongly favors' a transfer of venue under § 1404(a)."). That said, the Recommendation found that Arrow presented nine witnesses in Colorado, while Deco offered seven California names along with a brief overview of the materiality of those persons' testimony. The magistrate judge ultimately determined that even though Arrow had proffered more people, materiality was to be given greater consideration than numbers, and this factor weighed slightly in favor of Deco. Under the circumstances, and without additional information, the Court sees no reason to undermine that analysis, but notes that Deco's slight victory on this point does very little to move the needle away from Arrow's choice of venue.

### 2. Costs to the Parties

Here too, the Recommendation found marginally in favor of Deco, noting that the makeup of its witnesses appears to be higher-ranking, management-level individuals, and that their presence in Colorado might undermine the daily California operations of a small company like Deco, such as it is. The magistrate judge went on to recognize that Arrow is an international corporation, and forcing it to litigate elsewhere would constitute a lower relative financial hardship than would apply to Deco. But because Deco did not explain why all of its upper-management would need to be in Colorado throughout a trial, the Recommendation found this factor weighed only somewhat in Deco's favor. (Recommendation at 16–17.)

Deco objects that the magistrate judge's analysis "trivializes the hardship that absenting its CEO, President, and CEO [sic] for the entirety of the trial would work on Defendant," and further that the Recommendation "did not address the critical imbalance of power between the two parties in the case." (Objection at 15–16.) That second complaint is without basis—the Recommendation *did* consider the relative size of the litigants—and Deco has provided no record at all which elucidates its first consternation. Not all CEO's (or any other upper

management personnel) are equally valuable. The Court cannot assume that the time of Deco's CEO is of any more worth than that of Arrow's sales representative, or vice versa. Nor can it assume how, and to what extent, the respective absences of certain company personnel to attend trial is better viewed in favor of either party. Finally, Deco has never shown—and does not now—why it would have to relocate all of its upper-management ranks for the course of what the parties agree should be a one-week trial. Because of their respective sizes alone, the Court agrees that the costs factor may be construed faintly in Deco's favor.

### 3. Congested Dockets

The parties agree that "[w]hen evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Bartile Roofs, Inc.*, 618 F.3d at 1169 (cited by Objection at 13; Objection Response at 15). Addressing the relevant statistics, the Recommendation found this factor weighs slightly in favor of transfer. (Recommendation at 18–19.) Not satisfied, the Objection argues that one of these four factors should be the Court's polestar: "The Magistrate Judge acknowledges that Colorado's congested docket favors transfer, yet fails to acknowledge the seriousness of this issue. A trial in Colorado would take place nearly five months later than a trial in California." (Objection at 14 (failing to cite any law showing why that factor should be the most highly regarded of the four outlined by the Tenth Circuit).)

But as Arrow points out, two of the relevant statistics cut in favor of transfer and two against, effectively balancing the scale. Moreover, the parties have completed a scheduling order and should be nearing the discovery deadline of March 29, 2019. (ECF No. 24, at 8.) The Court is not convinced that transferring this case to another district, where a new court must familiarize

9

itself with the dispute, does not impart a greater burden there than does maintaining this matter here. This factor is transfer-neutral.

### 4. California Law

The Recommendation correctly stated that, while courts prefer that actions be adjudicated in the state that provides the governing law, this factor is "not entitled to great weight [when] the action does not involve complex legal issues." *Bartile Roofs, Inc.*, 618 F.3d at 1169–1170. The Court is not at all persuaded by the Objection's declaration that the Recommendation "fail[ed] to explain why [Arrow's] claims and [Deco's] anticipated counterclaims could only be cut-and-dry. This case encompasses not only a breach of contract claim; it also involves a dive into related California patent litigation, among other issues." (Objection at 13.) The Court agrees with the Recommendation that this factor nudges only slightly in Deco's favor.

Moreover, Deco is not aided in the slightest by its sudden allusion to a "related" patent claim. This matter has been pleaded as a straightforward contract case, along with related equitable remedies of promissory estoppel and unjust enrichment. The only commercial code statute at issue is identical in both California and Colorado, and this Court will have little trouble evaluating it in terms of California decisions. Moreover, though Deco now suggests that it does, this case involves no patent claim whatsoever. Even if it did, patent law is the province of the federal Courts; no interpretation of California law would be necessary.

### III. CONCLUSION

For the foregoing reasons, the Court finds that it has personal jurisdiction over Deco. Moreover, Deco has not met its burden to overcome the general presumption that strongly favors a plaintiff's choice of venue. The result reached in the Recommendation is **ADOPTED** in full and the Motion is **DENIED**.

DATED this 26th day of February, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge